FILED
03/12/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 1, 2019

**IN RE RILYN S.**

**Appeal from the Circuit Court for Loudon County**
**No. 2016-AD-1      Michael S. Pemberton, Judge**

_____

**No. E2018-00027-COA-R3-PT**

_____

A putative father challenges the trial court's decision to terminate his parental rights on five grounds. We find that the trial court erred in terminating the putative father's rights for failure to support. In all other respects, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

J. Patrick Henry, Kingston, Tennessee, for the appellant, Alcoa C.

Julia A. Spannaus, Maryville, Tennessee, for the appellees, Tommee R.H. and Stephanie L.H.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Rilyn S. was born to Ashley L.S. ("Mother") in May 2016 in the State of Tennessee. Prior to the child's birth, Mother met with Stephanie L.H., her first cousin, and Stephanie's wife, Tommee R.H. ("Foster Parents"), and the couple agreed to adopt the child. Rilyn tested positive for exposure to drugs at birth. Foster Parents assumed immediate physical custody of Rilyn pursuant to a power of attorney executed by Mother.

Foster Parents and Mother filed a petition to transfer custody in the Loudon County juvenile court on June 9, 2016. The same day, the juvenile court entered an agreed custody order giving Foster Parents full legal and physical custody of Rilyn, with Mother having the right to visitation at Foster Parents' discretion. The order further

named Alcoa C. ("Father") as the putative father of Rilyn and provided that the order did not affect his potential rights regarding the child. A copy of the order was sent to Father's address in California, where he was incarcerated.

On October 10, 2016, Foster Parents filed a petition for termination of parental rights and adoption in the trial court against Mother and Father. The petition stated that Mother was expected to surrender her parental rights to Rilyn. With respect to Father, the petition alleged the following grounds for termination: all of the grounds listed in Tenn. Code Ann. § 36-1-113(g)(9)(A)(i)-(vi); wanton disregard pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv); and Tenn. Code Ann. § 36-1-113(g)(14). The day after the petition was filed, Mother executed a surrender in favor of Foster Parents. On October 24, 2016, the court entered an order of partial guardianship appointing Foster Parents as the partial guardians and legal custodians of Rilyn.

Father was served with the petition, summons, and notice to incarcerated person on October 29, 2016. He was released from custody in January 2017. Father requested the appointment of counsel, and the court appointed counsel to represent him on January 24, 2017. The court also appointed a guardian ad litem. In August 2017, Foster Parents sought leave and were granted permission to amend their petition to add additional factual allegations.

The court heard this matter on September 27, 2017. At the beginning of the trial, the parties presented the court with stipulations regarding grounds for termination. The court then heard testimony from the following witnesses: Stephanie L.H., Tommee R.H., Stephanie's mother, Father's wife, and Father. After the trial, the court received proposed findings of fact and conclusions of law from Foster Parents and Father. In a memorandum opinion and order entered on December 12, 2017, the trial court granted the petition to terminate Father's parental rights and for adoption. The court found clear and convincing evidence to terminate Father's parental rights on the following grounds: (1) failure to support pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(ii); (2) failure to visit pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(iii); (3) failure to manifest an ability and willingness to assume legal and physical custody pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(iv); (4) placement in his custody poses substantial harm pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(v); and (5) failure to seek to establish paternity pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(vi).

On appeal, Father raises the following issues: (1) whether the trial court had subject matter jurisdiction over Father; and (2) whether the trial court erred in terminating Father's parental rights without any findings of fact. Moreover, pursuant to the holding of our Supreme Court in *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016), we "must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal."

STANDARDS GOVERNING PARENTAL TERMINATION TRIAL PROCEEDINGS AND
APPELLATE REVIEW

The Tennessee Supreme Court has described the appellate review of parental termination cases as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d at 523-24 (citations omitted); *see also In re Gabriella D.*, 531 S.W.3d 662, 680 (Tenn. 2017).

The termination of a parent's rights is one of the most serious decisions courts make. As the United States Supreme Court has said, "[f]ew consequences of judicial action are so grave as the severance of natural family ties." *Santosky v. Kramer*, 455 U.S. 745, 787 (1982). "Terminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005), "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)).

A parent has a fundamental right, based in both the federal and state constitutions, to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995) (citing *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993)). This right "is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d at 521-22, n.13 (citing U.S. Const. amend. XIV, § 1; Tenn. Const. art. 1, § 8). Although this right is fundamental, it is not absolute. *Id.* at 522. The State may interfere with

parental rights only in certain circumstances. *Id.* at 522-23; *In re Angela E.*, 303 S.W.3d at 250-51. Our legislature has listed the grounds upon which termination proceedings may be brought. *See* Tenn. Code Ann. § 36-1-113(g). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a statutory basis exists, *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002*); In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "'Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings.'" *In re Carrington H.*, 483 S.W.3d at 522 (quoting *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted)). "Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005) (citations omitted).

As a reviewing court, we "must 'distinguish between the specific facts found by the trial court and the combined weight of those facts.'" *In re Keri C.*, 384 S.W.3d 731, 744 (Tenn. Ct. App. 2010) (quoting *In re Tiffany B.,* 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007)). Then, we must determine "whether the combined weight of the facts . . . clearly and convincingly establishes all of the elements required to terminate" a party's parental rights. *Id.* (citing *In re Tiffany B.*, 228 S.W.3d at 156, and *In re S.M.*, 149 S.W.3d 632, 640 (Tenn. Ct. App. 2004)). "When a trial court has seen and heard witnesses, considerable deference must be accorded to the trial court's findings as to witnesses' credibility." *Id.* (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

Once a ground for termination is established by clear and convincing evidence, the trial court or the reviewing court conducts a best interest analysis. *In re Angela E.*, 303 S.W.3d at 251 (citing *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005), and *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *Id.* at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." *In re C.B.W.*, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App. June 26, 2006).

ANALYSIS

I. Subject matter jurisdiction.

Father asserts that the trial court erred in terminating Father's parental rights because the court lacked subject matter jurisdiction. We disagree.

The provision upon which Father relies, Tenn. Code Ann. § 36-2-307(b), applies to paternity actions. The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Tenn. Code Ann. §§ 36-6-201 to -243, governs subject matter jurisdiction in child custody proceedings involving parties from multiple states. *See Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006); *Staats v. McKinnon*, 206 S.W.3d 532, 544-47 (Tenn. Ct. App. 2006). Tennessee Code Annotated section 36-6-205(4) defines a child custody proceeding to include a proceeding to terminate parental rights. Thus, we must look to the UCCJEA to determine whether the trial court had subject matter jurisdiction to hear this action.

A key concept under the UCCJEA is "home state," a term defined as follows:

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

Tenn. Code Ann. § 36-6-205(7). In the present case, Rilyn lived in Tennessee with Foster Parents from birth, so Tennessee was his home state. Tenn. Code Ann. § 36-6-205(7). Foster Parents initiated an initial determination, defined under the UCCJEA as "the first child custody determination concerning a particular child," in juvenile court in June 2016. Tenn. Code Ann. § 36-6-205(8). The juvenile court granted full legal and physical custody of Rilyn to Foster Parents at that hearing. Subject matter jurisdiction for an initial custody proceeding is governed by Tenn. Code Ann. § 36-6-216(a), which provides, in pertinent part:

> Except as otherwise provided in § 36-6-219,[1] a court of this state has jurisdiction to make an initial child custody determination only if:

---

[1] Tennessee Code Annotated section 36-6-219 addresses temporary emergency jurisdiction and previous custody determinations; its provisions are not applicable in this case.

(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:

      (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

      (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (a)(2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3).

Pursuant to Tenn. Code Ann. § 36-6-216(a)(1), Tennessee was Rilyn's home state on the date of the commencement of the juvenile court action; therefore, the juvenile court had subject matter jurisdiction to determine custody.

In October 2016, when Foster Parents filed their termination petition in the circuit court, Tennessee remained the home state and exercised continuing jurisdiction under the UCCJEA. *See* Tenn. Code Ann. § 36-6-217(a).[2] We find no merit to Father's argument concerning subject matter jurisdiction.[3]

---

[2] Tennessee Code Annotated section 36-6-217(a) provides:

Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
(1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

Father further challenges the validity of the petition on the basis that it does not contain a verified statement that the petitioners consulted the putative father registry of California, as would be required by Tenn. Code Ann. § 36-1-113(3)(A)(iii).[4] When Foster Parents filed their petition in October 2016 (and amended it in 2017), this subsection did not exist. Therefore, Father's argument fails.

## II. Findings of fact.

Father next argues that, even though he stipulated to the grounds for termination, the trial court erred in failing to hear evidence of the grounds for termination and the underlying facts in court and on the record to allow the court to make a proper determination that the grounds were supported by clear and convincing evidence.

As already discussed, we must determine whether the facts found by the trial court constitute clear and convincing evidence to support each ground for termination. *In re Carrington H.*, 483 S.W.3d at 524. When a trial court fails to make sufficient findings of fact to allow for meaningful review, an appellate court cannot uphold the termination. *See In re Dakota M.*, No. E2017-01855-COA-R3-PT, 2018 WL 3022682, at *5 (Tenn. Ct. App. June 18, 2018).

At the beginning of the trial in this case, the parties announced that Father had agreed to stipulate to certain grounds for termination and that Foster Parents had agreed to drop other grounds. Father also stipulated to the related facts. The court then held a hearing focused upon one ground for termination, Tenn. Code Ann. § 36-1-113(g)(9)(v),

---

(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

[3] It appears from Father's assertions regarding his lack of contacts with Tennessee that he is objecting to the trial court's exercise of personal jurisdiction. This argument, too, is without merit. Personal jurisdiction may be obtained by a party's voluntary general appearance in a case. *Dixie Sav. Stores, Inc. v. Turner*, 767 S.W.2d 408, 410 (Tenn. Ct. App. 1988); *see also Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (holding that a court's lack of personal jurisdiction may be waived and "one method of waiver is by making a voluntary 'general appearance' before the court in order to defend the suit on the merits"). One may make a general appearance by filing an initial pleading or by making an appearance in court "that contest[s] the merits of the plaintiff's filing without raising the jurisdictional defense." *P.E.K. v. J.M.*, 52 S.W.3d 653, 660 (Tenn. Ct. App. 2001). In this case, Father participated in the trial without raising any jurisdictional objections.

[4] As of July 1, 2018, Tenn. Code Ann. § 36-1-113(3)(A)(iii) provides:

If the petitioner knows or has reason to believe that the mother was living or present in another state at the time of the child's conception, any putative father registry maintained by that state has been consulted within ten (10) working days of the filing of the petition and shall state whether there exists any claim on that registry to the paternity of the child who is the subject of the termination or adoption petition.

- 7 -

and the issue of best interest. After the hearing, the trial court directed both sides to prepare proposed findings of fact and conclusions of law. In its memorandum opinion and order, the trial court detailed the stipulated facts as well as the facts proven by exhibits submitted at trial and the facts proven through testimony. When making its findings regarding the grounds for termination, the trial court stated that it was finding the grounds by clear and convincing evidence and, with respect to the previously stipulated grounds, the grounds were supported "both through stipulated facts and evidence presented to the Court." With respect to the ground described in Tenn. Code Ann. § 36-1-113(g)(9)(v), the trial court relied upon evidence from testimony and exhibits.

The trial court made an independent determination that the evidence constituted clear and convincing evidence to satisfy each ground and made the required findings of fact and conclusions of law. We find no merit in Father's argument that there are no findings of fact.

III. Grounds for termination.

All of the termination grounds in this case appear in Tenn. Code Ann. § 36-1-113(g)(9)(A), a subsection governing putative fathers. The putative father grounds set forth "less exacting" requirements for termination than for other grounds. *In re Alexis M.M.*, No. E2012-00022-COA-R3-PT, 2012 WL 3553628, at *5 (Tenn. Ct. App. Aug. 20, 2012). In October 2016, when Foster Parents filed their termination petition, a person could be a putative father by falling into one of the following categories:

(1) The biological father of a child has filed with the putative father registry, pursuant to § 36-2-318, a statement of an intent to claim paternity of the child at any time prior to or within thirty (30) days after the child's birth and has notified the registry of all address changes;

(2) *The biological father has been specifically identified to the petitioners or their attorney*, or to the department, the licensed child-placing agency, or the licensed clinical social worker involved in the care, placement, supervision, or study of the child *as the child's father by the child's biological mother in a sworn, written statement* or by other information that the court determines to be credible and reliable;

(3) The biological father has claimed to the child's biological mother, or to the petitioners or their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child; provided, that if the biological father has previously notified the department of the biological father's claim to paternity of the child pursuant to the putative father registry, § 36-2-318(e)(3), the biological father shall be subject to all

- 8 -

the requirements for waiver of notice provisions of § 36-2-318(f)(2) and to all requirements for filing a paternity petition;

(4) The biological father is recorded on the child's birth certificate as the father of the child;

(5) The biological father is openly living with the child at the time the adoption proceeding is commenced and is holding himself out as the father of the child; provided, that if custody of the child has been removed from the biological mother by court order, notice shall be given to any man who was openly living with the child at time of the initiation of the custody or guardianship proceeding that resulted in the removal of the custody or guardianship of the child from the biological mother or biological father, if the man held himself out to be the father of the child at the time of the removal; or

(6) The biological father has entered a permanency plan under title 37, chapter 2, part 4, or under similar provisions of any other state or territory in which the biological father acknowledges paternity of the child.

Tenn. Code Ann. § 36-1-117(c) (2016) (emphasis added).  Father falls under subsection (2) of Tenn. Code Ann. § 36-1-117(c) because, as established by an exhibit introduced at trial, the Mother completed a sworn declaration days after the child's birth identifying Father as Rilyn's likely biological father.

A.  Failure to support.

The first ground for termination found by the trial court is failure to support pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(ii),[5] one of the grounds applicable to putative fathers.

In October 2016, Tenn. Code Ann. § 36-1-113(g)(9)(A)(ii) provided as follows:

The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101.

In its memorandum opinion and order, the trial court summarized the evidence underlying its decision to terminate Father's parental rights.  The parties stipulated that Father had paid no child support, that he knew the identity of the foster parents and how to locate them "through the certified letter he had previously received, that he was on

---

[5] The version of Tenn. Code Ann. § 36-1-113(g)(9)(A) applicable in October 2016, when the petition to terminate was filed, took effect on July 1, 2016.  This is the version referenced throughout this opinion.

notice of his paternity due to said letter and had not by the time of hearing provided a valid excuse of his non-payment of support."

As to Father's testimony at trial, he "claimed access to funds and stated that in August of 2017 he would have been able to support the child and admitted to making no support payments at any time for the child." Father testified that, when he was working and not incarcerated, he supported his eight other children. He stated that he was currently doing construction work with his brother. Because he was not licensed, he could not take a job paying over five hundred dollars. Father testified that, for the job he had just completed in New York, he earned approximately $275 to $385 for a week-and-a-half of work. The trial court found Father's testimony generally credible.

In *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *7 (Tenn. Ct. App. Oct. 30, 2007), this court stated that, "[i]n order to demonstrate what the child support guidelines require, there must be some evidence of the obligor's income." Because there was no evidence of the obligor's income, the court in *In re Adoption of S.T.D.* held that the proof did not "clearly demonstrate that Respondent had any kind of a regular income at all." *In re Adoption of S.T.D.*, 2007 WL 3171034, at *7. There was no evidence that the father in *In re Adoption of S.T.D.* had paid any support for his children. *Id.* at *8. Nevertheless, the court held that the ground of failure to pay reasonable child support had not been proven by clear and convincing evidence for purposes of terminating the father's parental rights. *Id.* at *7. We are aware of cases taking a more lenient approach to the proof required to establish this termination ground.[6] Given the interests at stake and the burden on the petitioners to prove the grounds for termination, we consider the approach in *In re Adoption of S.T.D.* to be more appropriate.

In light of the absence of proof of a regular income for Father, we do not find clear and convincing evidence supports the trial court's decision to terminate Father's parental rights on the ground of failure to support pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(ii).

B. Failure to visit.

The second ground for termination found by the trial court is failure to visit pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(iii), which provided:

> The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102(1).

---

[6] *See In re Maria B.S.*, No. E2012-01295-COA-R3-PT, 2013 WL 1304616, at *5, 11-12 (Tenn. Ct. App. Apr. 1, 2013); *In re Alexis M.M.*, 2012 WL 3553628, at *5, 7.

Father stipulated and testified that he never requested a visit with Rilyn. *See In re Adoption of S.T.D.*, 2007 WL 3171034, at *7.

We find clear and convincing evidence supports the trial court's decision to terminate Father's parental rights on the ground of failure to visit pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(iii).

C. Ability to assume legal and physical custody.

Another ground for termination found by the trial court is Tenn. Code Ann. § 36-1-113(g)(9)(A)(iv), which stated: "The person has failed to manifest an ability and willingness to assume legal and physical custody of the child."

As to this ground, courts consider whether a father is in a position to care for the child. *See In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *8 (Tenn. Ct. App. June 6, 2017). A court looks at the father's actions, not his expressions of intention. *Id.* (citing *In re Weston T.R.*, No. M2012-00580-COA-R3-PT, 2012 WL 3804414, at *7 (Tenn. Ct. App. Aug. 31, 2012). In *In re E.C.*, the court determined that the father's actions in violating house arrest, which resulted in his re-incarceration, evidenced "an unwillingness to act in a way that would allow him to assume custody of the child." *Id.* The Supreme Court in *In re Bernard T.*, 319 S.W.3d 586, 604-05 (Tenn. 2010), found clear and convincing evidence of the father's lack of ability to assume legal and physical custody of his children when the father "conceded that he was unable to support the children financially and that he could not provide them with a stable residence." In the case of *In re Adoption of S.T.D.*, the court considered the father's actions with respect to his other three children who were not subjects of the appeal. *In re Adoption of S.T.D.*, 2007 WL 3171034, at *8. The father testified that he had never paid child support to these children's mothers. *Id.* At the time of trial, one child was living with the stepmother, who testified that the father "has never checked on that child and has never offered her any child support." *Id.* The court determined that the father had not manifested the ability to assume legal and physical custody of the children. *Id.*

In the present case, Father stipulated that he was incarcerated at the time the petition was filed and was, therefore, unable to assume legal and physical custody of the child at that time. He was released from incarceration in mid-January 2017. Documents admitted into evidence show Father's extensive criminal history, including a misdemeanor conviction for drug possession in 2006; a felony conviction for grand theft in 2007; felony burglary convictions in 2008, 2010, and 2011; and three DUI convictions, the third of which resulted in a felony conviction in 2015.

At the trial, Tajmara C., Father's wife,[7] testified on his behalf. Mrs. C. explained that she and Father do not have any children together, but she could name eight children Father had with several different women. Father had two children with Mother, one of whom currently lived with Mrs. C., Father, and Mother in California, and Mother was pregnant again with a child presumed to be Father's. Mrs. C. testified that she was the main breadwinner for the family and, for the past few years, had earned approximately $80,000 per year as a respiratory therapist. Father had recently travelled to New York several times for work assignments, but Mrs. C. could not remember specific dates.

Father testified that Mother was a prostitute who lived with him and Mrs. C. and at least one other child. He admitted to conceiving three children with Mother, including the child she was presently carrying, and admitted knowing of Mother's history of drug use. Father "stated that he does not believe [Mother] is presently a prostitute, but that this is based upon an assumption that no one would pay for sex with a pregnant woman." Although Mrs. C. was the primary breadwinner, Father stated, he "works as a contract laborer handling roofing and other construction matters on a '1099' basis." He further testified that he frequently travelled outside of California. Father admitted that his most recent incarceration was the result of his fourth DUI in 2013. Father acknowledged his criminal history and past problems with alcohol. He provided proof that he completed a four-month rehabilitation program during his incarceration and asserted that the program helped bring about lasting change in his life.

While admitting that he had not paid child support in the past, Father stated that he would pay child support in the future. He was not prepared, however, to make a payment on the day of the hearing and could not contribute $100 to the support of the child that day. He claimed that he would be able to do so "at some time in the future." Father claimed that, in August of 2017, he would have been able to support the child. He had not initiated paternity proceedings, but testified that he had attempted to register with the putative father registry after his incarceration. According to Father, "when he was working, he supported his eight other children, and stated that when he was not working or when he was incarcerated that [Mrs. C.] would be able to support them."

Clear and convincing evidence supports the trial court's finding that Father failed to manifest an ability and willingness to assume legal and physical custody of Rilyn. Based upon his course of conduct, Father does not have the ability to provide a reliable source of financial support and a stable household for the child.[8]

---

[7] Mrs. C. stated that she and Father had an on-again-off-again relationship for approximately 27 years and married in November 2016.

[8] Father's wife is under no legal obligation to support the child and, therefore, we do not consider her income in assessing whether Father has the ability to provide for Rilyn.

- 12 -

D. Substantial harm.

The next ground for termination found by the trial court is Tenn. Code Ann. § 36-1-113(g)(9)(A)(v), which stated:

Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

The caselaw interpreting this provision offers some guidance in its application. In the case of *In re F.N.M.*, No. M2015-00519-COA-R3-PT, 2016 WL 3126077, at *1 (Tenn. Ct. App. Apr. 11, 2016), the putative father filed an emergency petition to establish paternity shortly after the petition to terminate parental rights was filed. This court affirmed the trial court's decision to terminate the father's parental rights under Tenn. Code Ann. § 36-1-113(g)(9)(A)(v) for risk of substantial harm. *In re F.N.M.*, 2016 WL 3126077, at *14. The child had been with the prospective adoptive parents since birth. *Id.* at *12. The trial court credited expert testimony concerning the loving home provided by the prospective adoptive parents, the secure bond between the child and the prospective adoptive parents, and "the adverse psychological and physical effects a child experiences if taken away from the person or persons with whom the child has bonded." *Id.* at *13. Furthermore, the proof established that the putative father had no relationship with the child, "due in large part to his incarceration for almost all of the child's life."[9]

---

[9] The decision in *In re F.N.M.* also distinguished *In re Adoption of A.M.H.*, 215 S.W.3d 793, 811-12 (Tenn. 2007), a decision of our Supreme Court. Because *In re Adoption of A.M.H.* did not address substantial harm in the context of the putative father statute, Tenn. Code Ann. § 36-1-113(g)(9)(A), we consider its teachings to have limited application in the present case. The Court, in *In re Adoption of A.M.H.*, declined to deprive a parent of physical custody where "the only evidence of substantial harm arises from the delay caused by the protracted litigation and the failure of the court system to protect the parent-child relationship throughout the proceedings." *In re Adoption of A.M.H.*, 215 S.W.3d at 812. The Court determined that evidence that a child will suffer harm from a change in custody as a result of living and bonding with non-parents "cannot constitute the substantial harm required to prevent the parents from *regaining custody*." *Id.* (emphasis added). The trial court, in *In re F.N.M.*, distinguished the facts of the case from *In re Adoption of A.M.H.* as follows:

In *AMH*, the parents had a bonded relationship with their child. The petitioners obstructed the continuation of that relationship. In the case before the Court, [father] has never had a relationship with [the child]. Further, [father] was incarcerated from the time of F.M.'s birth on July 14, 2012, until October 3, 2014. He could not have assumed legal or physical custody of [the child] prior to October 3, 2014. In addition, the case was set for trial on two prior occasions. On one occasion, the trial was continued because of the illness of [father's] counsel. On another occasion, the trial was continued at the request of [father], because his counsel wanted the opportunity to take the deposition of [mother]. The trial of the case then went forward as scheduled on the third occasion, December 10, 2014.

*Id.* *See also State v. C.H.H.*, No. E2001-02107-COA-R3-CV, 2002 WL 1021668, at *9 (Tenn. Ct. App. May 21, 2002) (affirming termination on the ground of substantial harm based on evidence that the child viewed the foster parents as her parents and was attached to her siblings and that the clinical social worker's evaluation of father showed him to have a "callous disregard" for these strong bonds).

In the present case, Father has never met Rilyn and testified that he had no relationship with the child. Father was incarcerated at the time of Rilyn's birth until January 2017. He requested a continuance of the final hearing, which was moved from August 7, 2017, to September 27, 2017. Furthermore, evidence presented at the hearing showed that there was a significant bond between Rilyn and Foster Parents and that his removal from Foster Parents would cause emotional trauma. Both Foster Parents testified that Rilyn is well-bonded with them and thinks of them as his parents. The child has lived with Foster Parents since birth and has never met Father. Rilyn's maternal grandmother corroborated Foster Parents' testimony and stated that the child is thriving in their care.

We conclude that clear and convincing evidence supports the trial court's determination to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(A)(v).

E. Failure to seek to establish paternity.

The final ground for termination is Tenn. Code Ann. § 36-1-113(g)(9)(A)(vi), failure to seek to establish paternity. This subsection provided as follows:

> The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j),[10] or after making a claim of paternity pursuant to § 36-1-117(c)(3).[11]

---

[10] Tennessee Code Annotated section 36-2-318(j) provides:

> A person listed on the [putative father] registry and entitled to notice of pending adoption or termination proceedings under subdivision (e)(3) shall have thirty (30) days from the receipt of such notice to file a complaint for parentage or to intervene in the adoption proceedings or termination of parental rights proceedings for the purpose of establishing a claim to parentage of the child or to present a defense to the termination or adoption case. The failure of such person to file a petition to intervene shall be sufficient cause for the court where the adoption proceedings or termination proceedings are pending to terminate the parental rights, if any, of such person pursuant to § 36-1-113(g)(9)(A)(vi).

[11] Tennessee Code Annotated section 36-1-117(c)(3) stated:

> The biological father has claimed to the child's biological mother, or to the petitioners or

Father stipulated that, after his release from incarceration in January 2017, he failed to file any petition seeking to establish paternity or custody of Rilyn. He also acknowledged in his testimony that he had not initiated paternity proceedings with respect to the child, although he stated that he had attempted to register with the putative father registry. Thus, there is no dispute that, despite having notice of his alleged paternity, Father failed to file a petition to establish paternity within thirty days.

Clear and convincing evidence supports the trial court's termination of Father's parental rights on the ground of failure to seek to establish paternity.

IV. Best Interest.

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Father's parental rights, we must next consider whether the trial court properly determined that termination of Father's parental rights is in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555. Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

When considering whether terminating a parent's rights to a child is in the child's best interest, a trial court is to consider the following non-exclusive factors:

---

their attorney, or to the department, a licensed child-placing agency, or a licensed clinical social worker who or that is involved in the care, placement, supervision, or study of the child that the biological father believes that the biological father is the father of the child; provided, that if the biological father has previously notified the department of the biological father's claim to paternity of the child pursuant to the putative father registry, § 36-2-318(e)(3), the biological father shall be subject to all the requirements for waiver of notice provisions of § 36-2-318(f)(2) and to all requirements for filing a paternity petition.

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). A trial court is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d at 682.

The trial court made the following findings regarding its best interest analysis:

There has been no evidence presented that [Father] has made any change in his circumstances such as to make it safe or in the child's best interests to place the child in his home; there has been no evidence presented that [Father] has made a lasting adjustment in his circumstances; [Father] has never visited the child; there is no relationship at all between

the child and [Father]; it would be detrimental to the child's emotional, psychological and medical condition to change caretakers at this time in his life due to the lack of relationship with the child; there was evidence presented that a substantial criminal history exists including burglary, theft, multiple DUIs and multiple traffic infractions demonstrating a pattern of criminal activity by Father from 1999 to 2016, with no proof presented that such behavior has changed; and that no child support has been paid by Father at any time.

Further, the court finds that it is not in the best interests of the child to be placed into the environment/home of the [Father]. The child's mother voluntarily relinquished her parental rights, but resides in the same home as [Father]. Additionally, the mother of the child is apparently pregnant with yet another child of [Father] yet lives in the home with [Father] and his wife. Additionally, the court would note that there was credible evidence introduced that the child was, at a minimum, exposed to illegal drugs while *in utero*. To be blunt, in light of all of the facts in this case, there simply exists no credible argument that living with [Father] would be in the child's best interests.

Clear and convincing evidence supports the trial court's finding that termination of Father's parental rights is in the best interest of the child.

We affirm the judgment of the trial court with the exception of its determination regarding the ground of failure to support.

CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed against the Appellant, Alcoa C., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

- 17 -